ERNESTO COLÓN APONTE, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE BAYAMÓN, recurrido

Núm. 1196.—*Sometido:* Noviembre 4, 1946. *Resuelto:* Marzo 6, 1947.

*Diego O. Marrero,* abogado del recurrente; el registrador recurrido compareció por escrito.

## EN RECONSIDERACION

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El 1ro. de julio de 1946 se presentó en el Registro de la Propiedad de Bayamón la escritura Núm. 3 de 30 de enero de 1946, otorgada ante el Notario Diego O. Marrero. En dicho documento se protocolizó el testamento mancomunado que con fecha 30 de abril de 1942 otorgaron en Saint Thomas, Frans Alfred Hammer y su esposa Edith Pauline Hammer. A esta escritura se acompañó la Núm. 11 otorgada en San Juan, el 8 de abril de 1946, ante el mismo notario. En ésta la co-testadora Sra. Hammer, a virtud del referido testamento, se adjudicó a sí misma una finca rústica radicada en el término municipal de Bayamón, inscrita a nombre de la sociedad de gananciales constituída por ella y su esposo. Se acompañaron, además, los documentos complementarios correspondientes. El mismo día se presentó la escritura Núm.

16, otorgada el 16 de mayo de 1946, ante el referido notario, por la cual Holger Rhode Fog, como apoderado de la Sra. Hammer, vendió la antes mencionada finca a Ernesto Colón Aponte.

El registrador denegó la inscripción del testamento por seis motivos que expuso en su nota de 22 de julio de 1946 y como consecuencia de esa denegación, el 12 de septiembre de 1946, fué retirada la escritura de compraventa a favor del recurrente sin que se hubiera practicado operación alguna.

Contra la nota denegatoria de la inscripción del testamento no se estableció recurso alguno, pero el 16 de septiembre de 1946 volvió a presentarse la escritura de protocolización del testamento con los documentos complementarios correspondientes, así como la referida escritura de compraventa. · En cuanto al testamento, el registrador lo devolvió sin practicar operación alguna, fundándose en que había sido denegada su inscripción por la nota de 22 de julio de 1946, la cual, según él, había quedado consentida.

En lo que respecta a la escritura de compraventa a favor del recurrente, la inscribió en cuanto a la mitad proindivisa que por concepto de gananciales, correspondía a la vendedora Edith Pauline Hammer y denegó ´la inscripción en cuanto a la otra mitad por no aparecer inscrita a favor de la transmitente, toda vez que había sido denegada la inscripción del testamento, como antes hemos indicado.

Contra la negativa de inscripción del testamento y contra la nota de 16 de septiembre de 1946 por la que se denegó la inscripción de la escritura de compraventa en cuanto a la mitad indivisa de la finca, por no aparecer ésta inscrita a nombre de la vendedora, estableció el comprador el presente· recurso.

## I

En el alegato que en apoyo de sus notas radicó el registrador, alegó como primera cuestión, que este recurso gubernativo debe desestimarse porque habiendo sido consentida la nota de 22 de julio de 1946, por la cual se denegó la

inscripción del testamento, no podía volverse a presentar ese documento para su inscripción.

Como el registrador sostenía que las dos veces en que se presentó la escritura de protocolización del testamento, así como la segunda vez que se presentó la escritura de compraventa, dichos documentos fueron presentados por la misma persona y el abogado del recurrente admitió que la primera nota por la cual se denegó la inscripción del testamento había sido consentida por no hallarse él en Puerto Rico ni haber tenido oportunidad de recurrir contra la misma, convinimos con el registrador en que, habiéndose consentido dicha nota por el recurrente, éste no podía volver a presentar la escritura de testamento. Consecuentemente, desestimamos el recurso por resolución de 13 de enero de 1947. Pero el recurrente solicitó la reconsideración y examinadas las constancias del Registro a virtud de certificaciones que solicitamos del registrador mediante una orden para mejor proveer, aparece que las dos veces en que se presentó la escritura de protocolización de testamento lo fué por el Lic. Diego O. Marrero. Sin embargo, no consta que en ambas ocasiones él actuara como mandatario verbal de la misma persona. Si en realidad el Lic. Marrero, al presentar por primera vez la escritura de protocolización de testamento, lo hizo como mandatario verbal de Edith Pauline Hammer y la segunda vez actuó como mandatario verbal del recurrente, no podemos convenir en que éste venga obligado por la nota que consintió la vendedora, pues el recurrente, independientemente de Edith Pauline Hammer, tenía interés en inscribir el testamento para poder así obtener la inscripción de la venta que se hizo a su favor. *Colonial Co.* v. *Reg.*, 1 S.P.R. 396, 401; *Jiménez* v. *Reg.*, 62 D.P.R. 353.

Ante la duda de que el recurrente hubiera consentido la primera nota por la cual se denegó la inscripción del testamento, procede dejar sin efecto nuestra resolución de 13 de enero de 1947, por la cual desestimamos el recurso y pasar a considerarlo en sus méritos.

## II

■ Discutiremos conjuntamente los dos primeros fundamentos de la nota del registrador.

1. El primero, por el cual denegó la inscripción de la escritura de protocolización de testamento, consiste en que se trata de un testamento mancomunado otorgado por marido y mujer y que tal testamento está prohibido por el art. 618 del Código Civil.

2. El segundo consiste en que no se ha demostrado cuáles son las formas y solemnidades de los testamentos otorgados en Islas Vírgenes, pero en el supuesto de que se hubiera demostrado que tales formas y solemnidades han sido cumplidas, ello no convalidaría el testamento, toda vez que, según el art. 11 del Código Civil, las leyes prohibitivas concernientes a las personas, sus actos o sus bienes, y las que tienen por objeto el orden público y las buenas costumbres, no quedarán sin efecto por leyes o sentencias dictadas o por disposiciones o convenciones acordadas en países extranjeros.

El recurrente sostiene que la prohibición del art. 618 del Código Civil(1) va dirigida contra el testamento mancomunado otorgado en Puerto Rico y que el que declara inválido el 667(2) es el mancomunado otorgado por ciudadanos de Puerto Rico fuera de esta Isla aunque esa forma de testar sea válida en el país de su otorgamiento. Partiendo de esta premisa concluye el recurrente que como el testamento en controversia fué otorgado por personas que no son ciudadanos de Puerto Rico, en un país cuyas leyes autorizan tal testamento, las prohibiciones de los artículos 618 y 667 no son aplicables y consecuentemente erró el registrador al califi-

(1)El art. 618 del Código Civil prescribe:

"No podrán testar dos o más personas mancomunadamente, o en un mismo instrumento, ya lo hagan en provecho recíproco, ya en beneficio de un tercero".

(2)El art. 667 del Código Civil prescribe:

"No será válido en Puerto Rico el testamento mancomunado prohibido por el artículo 618, que los ciudadanos de Puerto Rico otorguen en los Estados Unidos o en país extranjero, aunque lo autoricen las leyes del estado o de la nación donde se hubiere otorgado".

carlo de inválido. Arguye además, que tampoco es aplicable el último párrafo del art. 11 del Código Civil porque el testamento mancomunado no es contrario al orden público ni a las buenas costumbres.

El art. 618 no contiene la limitación que quiere imponerle el recurrente al efecto de que el testamento mancomunado sólo está prohibido cuando se otorga en Puerto Rico. Lo que dicho artículo prescribe es que el testamento mancomunado no es válido en esta Isla. Comentando el art. 669 del Código Civil Español, del cual fué copiado literalmente el 618 del nuestro, expone Manresa las principales razones de orden público que movieron al legislador español a prohibir(³) el testamento mancomunado excepto en aquellas provincias que se rigen por la legislación foral y ésta los autorice.(⁴) Dice el citado autor:

"Estos testamentos, mezcla informe de disposición *mortis causa* y de contrato, como en ocasión solemne le llamara un profesor distinguido, eran incompatibles con el principio de la revocabilidad esencial en materia de sucesión testada, y escasísimas ventajas podían ofrecer a cambio de los muchos inconvenientes que producían, por la confusión posible de los patrimonios, por la falta de espontaneidad de alguno de los otorgantes y por los peligros de fáciles sugestiones, y aun de evidentes captaciones, especialmente en los otorgados entre marido y mujer, en que a menudo solía haber una víctima de la seducción y del engaño.

"La ciencia condena el procedimiento, y no faltaron notarios entendidos que se negaron a autorizar tales actos, instruídos por la experiencia de que el cónyuge más enérgico imponía de ordinario su voluntad o su capricho al más débil, faltando así en alguno de

---

(³)El testamento mancomunado es puramente de origen español. Surgió en España en el Fuero Real, Ley 9, Tít. VI, lib. III. Su autorización estaba limitada entonces a los matrimonios que después de pasado un año del casamiento no habían tenido hijos ni existían parientes con derecho a heredarlos; pero si después tenían hijos en su matrimonio el testamento quedaba revocado. La Ley de Partidas lo prohibió excepto cuando fuere otorgado por caballeros al entrar en alguna batalla. Ley 33, Tít. XI, partida 5ta. No obstante esa prohibición, el uso llegó a autorizarlo por lo que, al aprobarse el Código Civil, fué necesario volverlo a prohibir. 12 Scaevola, Código Civil, pág. 186.

(⁴)Artículos 12 y 13 del Código Civil Español.

los otorgantes la necesaria libertad para disponer de sus bienes por el predominio que el otro ejerciera en su ánimo.

"Tan escandalosos abusos, y las repetidas protestas que los mismos arrancaban, no podían pasar desapercibidos a la Comisión redactora del Código, y dando satisfacción cumplida a ellas, derogó para en adelante esta clase de testamentos. Pero la regla 2a. de las disposiciones transitorias del mismo dejó subsistentes los otorgados en dicha forma bajo el imperio de la legislación anterior, con las limitaciones que más adelante expondremos; y, por lo tanto, interesa conocer las prescripciones del antiguo derecho, puesto que en la práctica, y en la diaria labor de los tribunales, pueden presentarse aún a la resolución de los mismos algunas disposiciones otorgadas en dicha forma." Manresa, Comentarios al Código Civil, t. 5, págs. 420-1 (2da. ed. 1905).

Es obvio que el testamento mancomunado otorgado por ciudadanos de Puerto Rico, en país cuyas leyes lo autoricen, para tener efecto en dicho país, no ofrece problema alguno de derecho internacional privado, y por consiguiente no es de aplicación la legislación de Puerto Rico que, naturalmente, no puede tener efecto extraterritorial. Pero el testamento que nos ocupa dispone de bienes inmuebles radicados en Puerto Rico y esa circunstancia hace que entre en juego el art. 11 del Código Civil, cuyos párrafos primero y tercero, respectivamente, dicen así:

"Las formas y solemnidades de los contratos, testamentos y demás instrumentos públicos, se rigen por las leyes del país en que se otorguen.(5)

"* * * * * * *

"No obstante lo dispuesto en este artículo y en el anterior, las leyes prohibitivas concernientes a las personas, su actos o sus bienes, y las que tienen por objeto el orden público y las buenas costumbres, no quedarán sin efecto por leyes o sentencias dictadas, ni por disposiciones o convenciones acordadas en países extranjeros."

(5) Parece conveniente consignar que algunos autores entienden que el defecto del testamento mancomunado no es de mera forma, sino que va dirigido a lo substancial, o sea a la validez intrínseca del testamento. 5 Manresa, Comentarios al Código Civil Español, (2da. ed. 1905) pág. 693; Wolff, *Private International Law*, p. 605; 3 Bonel y Sánchez, Comentarios al Código Civil Español, lib. 3, pág. 305.

Si no existiera el tercer párrafo del art. 11 y el art. 666 del Código Civil,(⁵ᵃ) la interpretación que da el recurrente al art. 667 sería plausible; pero ya hemos visto que el testamento mancomunado ha sido prohibido por considerarlo contrario al orden público. Siendo ello así, la prohibición contenida en el art. 618 no queda sin efecto por el hecho de que el testamento que nos ocupa haya sido otorgado por personas que no son ciudadanos de Puerto Rico, en un país cuyas leyes lo autoricen. A este efecto dice De Buen:

"Como en la aplicación de leyes extranjeras debe regir, en todo caso, la limitación establecida en el art. 11, de que siempre queden a salvo las leyes prohibitivas concernientes a las personas, sus actos y sus bienes, y las que tienen por objeto el orden público y las buenas costumbres, consideramos que nadie podrá fundarse en España en su estatuto personal para realizar un acto que contraríe aquellas normas." 1 De Buen, Derecho Civil Español Común, (2da. ed. 1930) pág. 104.

Podría argüirse con visos de razón que, interpretando a contrario *sensus* el art. 667 del Código Civil, se llega a la conclusión de que cuando el testamento mancomunado es otorgado, como en el presente caso, por personas que no son ciudadanos de Puerto Rico en país cuyas leyes lo autoricen, tal testamento es válido en este país. Bastará decir para contestar este argumento que el art. 667 no es más que una excepción al art. 666,(⁶) excepción necesaria para que no pueda entenderse que, amparándose en el art. 666, los ciudadanos de Puerto Rico pueden burlar la prohibición del art. 618 otorgando, en países que lo autoricen, un testamento mancomunado que en todo o en parte, deba tener efecto en Puerto Rico.

Comentando Manresa el art. 733 del Código Civil Español, igual al 667 del nuestro, dice:

(5ᵃ)El art. 666 del Código Civil, en lo pertinente, prescribe:

"Los ciudadanos de Puerto Rico podrán testar fuera de Puerto Rico, sujetándose a las formas establecidas por las leyes del país en que se hallen".

(⁶)Sánchez Román, Derecho Civil, t. 6., (Vol. 1) págs. 528–29 (2da. ed. 1910).

". . . Según expusimos en las consideraciones especiales de la presente sección, los documentos, y por lo tanto, los testamentos otorgados en el extranjero, para que sean válidos y eficaces en España, necesitan, entre otros requisitos, *que sea lícito y permitido por las leyes españolas el acto o contrato objeto de los mismos.* Así lo disponía el Real Decreto de 17 de octubre de 1851: así lo ordena en general, para toda clase de documentos, el art. 600 de la Ley de Enjuiciamiento Civil [599 de la Ley de Enjuiciamiento Civil para las Islas de Cuba y Puerto Rico]; y esta es la teoría generalmente admitida. En su virtud, no siendo lícito y permitido en España el testamento de mancomún, según el art. 669 del Código, el otorgado en el extranjero en dicha forma carecería del requisito inicial indicado, y no podría surtir efecto alguno en nuestro país. (Bastardillas del autor.)

"Esto mismo es lo que viene a disponer el art. que examinamos, *el cual no declara nulo el testamento indicado, otorgado en el extranjero, sino que se limita exclusivamente a privarlo de validez tan solo en España.* Fuera de ella podrá ser o no válido según la legislación que impere; pero en España no podrá hacerse valer ni ejecutarse o llevarse a efecto las disposiciones de sus cláusulas." (Bastardillas nuestras.) Manresa, Comentarios al Código Civil Español, t. 5, pág. 695 (2da. ed. 1905).

Invoca el recurrente la resolución de la Dirección General de los Registros de 28 de octubre de 1894. Pero esa resolución no sostiene su tesis. Allí se trataba de un testamento mancomunado otorgado en Aragón por vecinos de aquella provincia para tener efecto dentro de su territorio.(⁷)

---

(⁷)Parece pertinente consignar aquí los siguientes párrafos de la citada resolución de 28 de octubre de 1894:

"Considerando que ante artículos tan categóricos no es legal estimar derogado precepto alguno del derecho foral por los del Código Civil, siquiera se trate de *prescripción tan terminante y general cual la del art. 669:*

"Considerando que no puede tenerse en cuenta al resolver este recurso el art. 10 que el Registrador invoca, por la sencilla razón de que este artículo tiene por objeto regular la eficacia extraterritorial de las Leyes, ora surja el conflicto entre la Ley española y la extranjera, ora entre un precepto del derecho común y otro del derecho foral, y *la cuestión origen de este expediente no versa sobre la fuerza de una Ley aragonesa fuera del territorio de aquella provincia,* sino sobre la vigencia de una determinada observancia antagónica de una prohibición del Código, por lo cual los únicos artículos que hay que consultar y aplicar son los ya citados 12 y 13; . . ." (Bastardillas nuestras). Decretos Referentes al Registro de la Propiedad (Años 1892–1895) págs. 586, 588.

Pero, como la legislación foral de Aragón autoriza ese testamento, no estaba envuelto en dicho caso conflicto de leyes y la situación era igual a la que hubiese surgido tratándose de un testamento mancomunado otorgado en un país cuyas leyes lo autoricen, por ciudadanos de dicho país, para tener efecto dentro de su territorio.

No siendo válido ese testamento en Puerto Rico aunque haya sido otorgado en las condiciones en que lo fué, es decir, en un país donde está autorizado y por personas que no son ciudadanos de Puerto Rico, dicho documento no puede trasmitir los derechos que tenía el testador en la finca de su propiedad radicada en Puerto Rico.

La naturaleza del defecto de que adolece el documento objeto de este recurso nos excusa de considerar los demás fundamentos de la nota recurrida. No erró el Registrador al denegar su inscripción y consecuentemente tampoco erró al inscribir la escritura de compraventa tan sólo en cuanto a la mitad de la finca que por concepto de gananciales, aparecía previamente inscrita a favor de Edith Pauline Hammer.

*Procede confirmar la nota recurrida.*

El Juez Asociado Sr. Snyder concurre en el resultado.